UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CORNELL COOPER BROWN, | ) | 1:05-CV-01029 AWI JMD HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| JEANNE WOODFORD, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Cornell Cooper Brown ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court. (Pet. at 1.)

On April 15, 2002, Petitioner was charged with two counts of battery by an inmate on a correctional officer (Cal. Penal Code § 4501.5) and one count of aggravated battery by an inmate on a correctional officer (Cal. Penal Code § 4501.1). (Answer at 2). The information also alleged that Petitioner was in violation of California "Three Strikes" law (Cal. Penal Code §§ 667 (a)-(e), 1170.12). (Answer at 2).

On April 16, 2002, Petitioner waived his right to counsel and elected to proceed to trial in propria persona ("pro per"). (Answer at 2).

Petitioner was found guilty as charged by a jury on June 6, 2002. (Answer at 2). Petitioner was sentenced to a prison term of seventy-eight years to life. (Answer at 3).

Petitioner appealed his conviction to the California Court of Appeal. On May 17, 2004, the

appellate court affirmed Petitioner's conviction in an unpublished opinion.  (Pet. at 3; Answer at 3).

On June 17, 2004, Petitioner filed a petition with the California Supreme Court for review of the Court of Appeal's decision.  (Answer at 3).  The California Supreme Court denied the petition on August 11, 2004.  (Pet. at 3; Answer at 3).

On August 10, 2005 Petitioner filed the instant petition in this Court.  The petition originally raised four grounds for relief.  First, Petitioner asserts that the trial court violated his constitutional rights when it failed to halt proceedings when he mentally "decompensated."  (Pet. at. 5).  Further, Petitioner alleges that he is entitled to a due process hearing.  (Id).  As his third ground for relief, Petitioner alleges prosecutorial misconduct.  Lastly, Petitioner alleges that, as a result of his diminished mental capacity, the trial court deprived him of constitutional rights when it permitted Petitioner to continue to represent himself.

On February 27, 2006, Petitioner amended his petition to include the additional claim that the trial court committed a sentencing error.

On July 16, 2007, Respondent filed an answer to the petition.

## FACTUAL BACKGROUND[1]

On January 23, 24, and 25, 2002, [Petitioner] Cornell Cooper Brown, an inmate at the California Correctional Institution at the Tehachapi (CCI), attacked various correctional officers with spit and other fluids.  A jury subsequently convicted him of battery by gassing upon a correctional officer (Pen. Code § 4501.1; count 1) and battery by a prisoner on a non-confined person (§ 4501.5; counts 2 & 3).  Following a bifurcated court trial, appellant was found to have suffered two prior "strike" convictions (§§ 667, subds.(b)-(I); 1170.12, subds. (a)-(e)), and to have served three prior prison terms (§ 667.5 subd. (b)).  He was sentenced to 78 years to life in prison, with the sentence ordered to run consecutively to the term he was already serving, and to pay various fines and restitution.

## DISCUSSION

---

[1] These facts are derived from the California Court of Appeal's opinion issued on May 17, 2004.  (Lodged Doc. 6).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

**I.      Jurisdiction**

A person in custody pursuant to a state court judgment may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution or law or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Furthermore, the challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

**II.     Legal Standard of Review**

This Court may entertain a petition for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under AEDPA, a court will not grant an application for a writ of habeas corpus unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."" Lockyer, 538 U.S. at 71

(quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what constitutes "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 529 U.S. at 413).

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Duhaime v. Ducharme, 200 F.3d 597, 600-601(9th Cir. 1999).

Furthermore, AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual determinations are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state court's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.    Review of Petitioner's Claims**

### A.     Ground One

Petitioner alleges that the trial court violated his constitutional rights when it allowed the proceedings to continue after Petitioner had "decompensated." (Pet. at 5).  Petitioner does not develop this claim further in his petition for relief before this Court.  However, Petitioner raised the issue of his mental competency in his appeal to the California Court of Appeal (Lodged Doc. 1 at 28-35) and in his petition for review before the California Supreme Court (Lodged Doc. 7 at 21-22).[2] Before the state courts, Petitioner alleged that there lacked substantial evidence to support the trial court's finding regarding Petitioner's mental competence.  The appellate court, in a reasoned decision, rejected Petitioner's contentions. (Lodged Doc. 6).  The California Supreme Court summarily denied Petitioner's claims.  By its "silent order" denying review of the appellate court's decision, the California Supreme Court is presumed to have denied the claim presented for the same reasons set forth by the Court of Appeal.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

It is a violation of the Due Process Clause to require an incompetent defendant to stand trial. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Medina v. California, 505 U.S. 437, 453 (1992); Pate v. Robinson, 383 U.S. 375, 378 (1966).  As stated by the Supreme Court, "[a] defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" Cooper v. Oklahoma, 517 U.S. at 354 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)).  Due process requires that a trial court conduct a hearing on a defendant's mental competence to stand trial when the trial court is confronted with evidence that raises a "bona fide doubt" as to the defendant's mental competence.  Pate, 388 U.S. at 385.

"A bona fide doubt exists if there is substantial evidence of incompetence, or substantial evidence that the defendant lacks sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him." Williams v. Woodford, 384 F.3d 567, 604 (9th Cir. 2004) (internal

---

[2]Respondent interprets Petitioner's Ground One as a previously asserted claim that the trial courts' failure to revoke his pro per status following his mental deterioration violated his right to due process.  However, as Petitioner's application for a writ of habeas corpus states that specific claim as his fourth ground for relief, this Court construes Ground One to be the separate mental competency claim raised before the California Court of Appeal and Supreme Court.

citations omitted), *cert denied*, 546 U.S. 934 (2005).  Relevant factors include, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180 (1975) (concluding that any one of these factors standing alone could in some circumstance be sufficient to compel a competency hearing).

Furthermore, "[t]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope v. Missouri, 420 U.S. at 172.  "[A] due process evidentiary hearing is constitutionally compelled at any time that there is substantial evidence that the defendant may be mentally incompetent to stand trial." Moore v. United States, 464 F.2d 663, 666 (9th Cir. 1972).  A defendant is entitled to the assistance of counsel and to present medical evidence during a competency hearing on the issue of his mental condition.  Medina, 505 U.S. at 450.  "The Due Process Clause does not, however, require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." Id. at 451.  "[I]t is enough that the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial." Id.[3]

California's procedures for holding a competency hearing are codified in California Penal Code § 1368.  This statute provides that when a doubt arises in the mind of the judge as to the mental competence of the defendant, the judge is required to state that doubt in the record and inquire from the defense counsel his/her opinion as to the mental competence of the defendant.  Cal. Penal Code § 1368(a).  Where the defendant is not represented by counsel, the statute requires the appointment of counsel.  Id.  If defense counsel informs the court of their belief that defendant is mentally incompetent, the trial court is required to order a hearing.  Cal. Penal Code § 1368(b).  A trial court may still order a hearing in the absence of defense counsel's belief that defendant is incompetent.  Id.

**1. Trial Court's Determination Not to Hold Hearing Prior to Suicide Watch**

In its reasoned decision, the Court of Appeal found that the record supported the trial court's decision not to hold a hearing prior to when Petitioner became suicidal since the trial court only

---

[3] In Medina, it was held that the California statute that places the burden of proof on a defendant to show that he is not competent to stand trial, rather than requiring the state to show that he is competent, does not violate due process.  505 U.S. at 446-52.

became aware of substantial evidence questioning Petitioner's mental competency after the completion of the first part of the bifurcated trial.  It was then that the trial court learned Petitioner had been placed on suicide watch.  The appellate court, in discussing Petitioner's demeanor and conduct in the first phase of trial, stated that "[f]rustation and anger do not constitute mental deterioration; the court reasonably could have concluded that appellant's conduct was caused by an excess of temper, not a lack of competence."  (Lodged Doc. 6 at 33.)  Further, the appellate court found substantial evidence, in the form of an expert opinion, to support the trial court's finding after a competency hearing was held that Petitioner was mentally competent to stand trial.  Thus, the appellate court then concluded that Petitioner's right to due process had not been violated.

"In reviewing whether a state trial judge should have *sua sponte* conducted a competency hearing, we may consider only the evidence that was before the trial judge." Davis v. Woodford, 384 F.3d 628, 645 (9th Cir. 2004) (finding no substantial evidence to compel a competency hearing based solely on the recalcitrant and detrimental behavior exhibited by defendant in Davis, as distinguished from previous Supreme Court and Ninth Circuit precedents where there existed additional evidence, such as history of psychiatric hospitalization, brain injuries, and diagnosis of severe delusion disorder by court appointed psychiatrist).  A finding by the state trial and appellate court that there did not exist substantial evidence to compel a competency hearing are findings of fact to which the federal courts must defer unless the findings are unreasonable pursuant to 28 U.S.C. § 2254(d)(2). Mendez v. Knowles, 535 F.3d 973, 987 (quoting Torres v. Prunty, 223 F.3d 1103, 1105 (9th Cir. 2000)).  Consequently, the dispositive question on Petitioner's first ground for relief is whether the appellate and trial court's conclusion that substantial evidence did not exist questioning Petitioner's mental competency until Petitioner became suicidal was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The record demonstrates that Petitioner's demeanor and behavior at trial was not substantial evidence of the incompetence or lack of rational understanding spoken of in Williams.  Petitioner was coherent, responsive to the court's inquires and the proceedings, and understood the proceedings.  Petitioner's many objections during prosecutor's examination, and his own cross examination, of witnesses evidence that Petitioner did not lack a rational understanding of the

proceedings. The only conduct by Petitioner that may have been classified as possibly raising concerns about his mental competence occurred on the final day of the trial's first phase. After initially indicating that he would testify in his own defense, Petitioner refused to testify when the court told Petitioner than Dennis Harvey, the criminalist who tested the evidence in Petitioner's case, would not be testifying. This following colloquy, between the Court and Petitioner, took place on that date:

> THE COURT: Mr. Brown, I know you indicated before we took our recess that you intended to testify. I just wanted to make sure that you've had an opportunity to consider the matter fully and make an informed decision. Do you have any questions of the Court at all about testifying or your rights or anything of that nature, sir?
> [PETITIONER]: Yes, your Honor. I really can't make a decision until Dennis Harvey is no longer ill because he's the actual criminalist that did the testing, and I need certain answers about C.O. Redenius' jumpsuit and the test results and–because I'm not really understanding fully about that because it was separate dates and separate times of incidents.
> Redenius' incident was on the 24th of January approximately 8:10. All the other ones, Officer Hewitt, Officer Martinez, this incident occurred on January 25 at approximately 8:15. Urine samples were videotaped and seized into evidence at that time. I don't understand why Officer Redenius' jumpsuit would be tested by Dennis Harvey. How could the evidence get mixed up and then placed into evidence and allowed in exhibits and results be read on them?
> THE COURT: Mr. Brown, the state of the evidence as it is now is that the People have rested. They've put all the evidence they intend to put on. If you think that something in their evidence is inadequate, you're perfectly free to make a motion or to argue that to the jury as is appropriate, but we are now ready to go forward with your defense in the case if you choose to put one on.
> [PETITIONER]: I cannot go forward until Dennis Harvey appears.
> THE COURT: He's not going to be appearing. If you think that's a problem in their proof, then you need to argue that to the jury, but that's all the evidence that was going to--
> [PETITIONER]: I can't put on my case without Dennis Harvey.
> THE COURT: He's not going to be testifying.
> [PETITIONER]: I can't cross examine him.
> THE COURT: That's correct. You're not going to have an opportunity to cross-examine him. The testimony came in through the testimony of Criminalist Smith, and that's all there is sir. So--
> [PETITIONER]: Okay. Well, then I can't go forward with the case at all.
> THE COURT: Are you choosing not to put on any evidence in defense? Because the case will go on, sir. I understand your motion.
> [PETITIONER]: It would have to go on without my presence, then, your Honor.
> THE COURT: Well, that's a choice you can make, sir. Are you asking not to be involved in the case?
> [PETITIONER]: I'm not asking not to be. I'm just saying I would prefer not for it to go on without me–my presence, if that's the case.
> THE COURT: You certainly have a right to be present in this trial once begun. You have a right to put on evidence, your own testimony, or that of other witnesses or other evidence.
> [PETITIONER]: I cannot put on my evidence if I cannot cross-examine

1  Harvey.

2  (RT, Vol. 3 at 436-439).

3  It was at this point that Petitioner demanded to go back to the correctional facility, reiterating to the court that he would not testify or be present for court proceedings if he had to go on without the criminalist's testimony. (RT, Vol. 3 at 439-441). However, Petitioner returned to the next court session, on the same day, explaining that he had not felt it wise to continue in the proceedings without "being able to establish the fact of whether or not the evidence from the 24th were actually received into the laboratory for testing." (RT, vol. 3 at 453). Petitioner then proceeded to give a coherent closing argument in which he argued that correctional officers were lying, as illustrated by the evidence mix up. (RT, Vol. 3 at 477).

Thus, the trial court was not presented with substantial evidence prior to when Petitioner became suicidal that Petitioner lacked the mental competence required to stand trial and the state court's finding that the evidence in this case did not raise a "bona fide doubt" as to Petitioner's competence to stand trial was reasonable. Pate, 383 U.S. at 385. Accordingly, Petitioner was not entitled to a competency hearing until the trial court learned that he was on suicide watch.

**2.      Mental Competence Determination by Trial Court After Suicide Watch**

Once substantial evidence was presented to the trial court questioning Petitioner's mental competency, the court held a hearing comporting with the procedures California has set forth in its Penal Code. Upon the commencement of the second phase of Petitioner's bifurcated trial, the trial court learned that Petitioner was on suicide watch and refused to come to court. (RT, Vol. 4 at 603-604). After conversing with the prison psychiatrist, Dr. Pham, the court scheduled a section 1368 hearing to determine Petitioner's competency, ordered an evaluation by prison authorities of Petitioner's competency, and appointed counsel to represent Petitioner, pursuant to Cal. Penal Code § 1368.1, for the purpose of the competency hearing. (RT, Vol. 4 at 609-612). This is no doubt then that the trial court followed all the procedures required by California law in determining that Petitioner was mentally competent.

The trial court's finding that Petitioner was competent to stand trial for the second part of the bifurcated trial was based primarily on a psychological evaluation by Dr. Couture. (RT, Vol. 4 at

1  362-364). The appellate court's found that substantial evidence supported the trial court's finding,

2  citing to Dr. Couture's report that:

> Based on their conversation, Couture concluded that appellant clearly understood the charges against him and the risk he was facing, as well as the roles of the court, jury, and prosecutor. Couture also found appellant capable of telling a clear, coherent, and sequenced story, and able to give a detailed account of what had occurred. Couture opined that while appellant was using a technique which would probably be unsuccessful in court, his decision to do so was reasoned and not the result of any mental disorder.

(Lodged Doc 6 at 34).

The appellate court further found that, while Petitioner's demeanor and conduct during the second phase of the trial was "angry and manipulative," this did not call into question the trial court's determination of competency nor did it raise a bona fide doubt as to his mental competency during the second phase. (Id. at 35). A review of the record reveals that Petitioner was verbally combative with the court, as exemplified by the following colloquy:

> THE COURT: Mr. Brown, do you wish to remain for the Phase II trial or do you wish to not remain?
> [PETITIONER]: It was sent to me today. It was only sent to me right now.
> THE COURT: The law doesn't allow me to do that.
> [PETITIONER]: It doesn't allow you to do all the shit you've been doing up in here, but you did it any motherfucking way. You took my life.
> THE COURT: Mr. Brown, we're going to proceed with the Phase II at this time.
> [PETITIONER]: Which is done.
> THE COURT: No, sir. All we did was to determine that you are able to defend yourself on that Phase II, and I've concluded that you are able to.
> [PETITIONER]: Oh, you have.
> THE COURT: Actually, sir, the legal proceedings are not over.
> [PETITIONER]: It was over before they started. They was over before I even begin. So you sentence me or whatever. Now I'm not representing myself.

(RT, Vol. 5 at 21-22).

Even with such behavior, the record does not indicate that Petitioner lacked an understanding of the proceedings or lacked rational thought such that he was incompetent to stand trial for this second phase. This Court concludes that the state court's findings of mental competence was reasonable in light of the evidence before it.

**B.     Ground Two**

Petitioner claims as his second ground for relief that he was entitled to a due process hearing. (Pet. at 5). While Petitioner fails to elaborate in the instant petition as to why he was entitled to a hearing, Petitioner argued before the California Court of Appeal and the California Supreme Court

that Petitioner's right to due process had been violated by the trial court's failure to provide him a hearing to review restrictions on his pro per privileges. (Lodged Doc. 1 at 17-18).

The appellate court rejected Petitioner's contention that the trial court had erred by not providing him a hearing on the restrictions placed on his pro per privileges, stating that:

> [Petitioner] further contends that the court violated his right to due process by refusing to hold a hearing on the availability of privileges for a defendant acting in pro. per. While we find that error occurred in conjunction with [Petitioner]'s request that the trial court issue subpoenas,[4] we conclude [Petitioner] has failed to establish prejudice.

(Lodged Doc. 6 at 15).

The court's finding of no prejudice was based on the fact that Petitioner's restrictions to legal materials stemmed from his placement in administrative segregation, which occurred well before his initial court appearance and Petitioner's decision to represent himself. The appellate court concluded that since, "the record does not establish that the level of restrictions changed over the course of proceedings, [Petitioner] was not automatically entitled to judicial review of those restrictions." (Lodged Doc. 6 at 16).[5]

Furthermore, the record reveals that the trial court did conduct an evidentiary hearing, prior to the start of trial, to inquire into Petitioner's allegation that he was being denied access to legal materials. The trial court heard testimony from Jack Hudson, the legal officer at the correctional facility Petitioner was assigned to. (RT, Vol. 1 at 27-47). The trial allowed the Petitioner to cross examine Mr. Hudson about the lack of materials provided to him. (RT at 39-46). The trial court also heard testimony from and allowed Petitioner to cross examine Manuel Vasquez, the court liaison for the correctional facility. (RT, Vol. 1 at 49-61). During cross examination, the trial court had to limit Petitioner's questioning of Mr. Vasquez to the issue at hand, stating that, "the only issue

---

[4] The appellate court held that the trial court had erred in refusing to subpoena witnesses on Petitioner's behalf. However, the appellate court found that the Petitioner had not established prejudice. Petitioner does not raise the trial court's failure to issue subpoena's on his behalf in his federal habeas petition.

[5] An argument exists that Petitioner procedurally defaulted this claim The appellate court questioned whether such a claim was properly before it, as Petitioner raised the issue before the trial court but failed to follow the trial court's instruction that Petitioner make a motion with notice to the Department of Corrections. (Lodged Doc. 6 at 17-18). As the appellate court's opinion did not "clearly and expressly" invoke independent and adequate state law grounds, nor did Respondent raise such an argument, this Court exercises its discretion to review the claim on the merits. *See* Harris v. Reed, 489 U.S. 255, 260-263 (1989); *see also*

that I'm interest in at this point is the issue of whether of not you've had access to appropriate legal research tools and the like..." (RT, Vol. 1 at 54).  The trial court, addressing Petitioner, ultimately concluded that:

> From what I have heard here, there has been adequate and appropriate access to legal materials.  The document which [Petitioner]–I don't have any doubt that he did ask for them, but it doesn't solve the problem to ask for something that doesn't exist.
> Apparently, the items you asked for, Mr. Brown, do not exist.  It wasn't a matter of moving to a different facility or a different law library.  You are asking for forms which simply are not around.  And if you had motions in those area, then you needed to draft them yourself.  So the failure to transfer you someplace else just isn't a failure to do anything wrong.  It's just they don't exist.

(RT, Vol. 1 at 62).

Additionally, Respondent is correct in asserting that the Supreme Court has never established a clear right of access to legal materials for pro se defendants.  See Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005) (per curiam) (holding that it was error to find that a violation of a law library access right is a basis for federal habeas relief).  Furthermore, Petitioner fails to establish that the denial of access to legal materials "hindered his efforts to pursue a legal claim," or otherwise prejudiced Petitioner.  Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996) (citing to Bounds v. Smith, 430 U.S. 817 , 97 S.Ct. 1491 (1977)).  As the appellate court stated, and the trial court found, Petitioner's "problem appears to have been that he wanted to bring motions for which no forms existed.  The nonexistence of standard forms did not prevent him from creating his own motions.  Again, the record shows he knew how to do that."  (Lodged Doc. 6 at 18).

Thus, this Court rejects Petitioner's second ground for relief as the state court decision is not contrary to clearly establish Federal law as decided by the Supreme Court and the record reveals that the trial court did conduct a hearing to inquire about the restrictions on Petitioner's access to legal materials.

### C. Ground Three

For his third ground for relief, Petitioner alleges that his right to due process and a fair trial were violated by prosecutorial misconduct without, specifically alleging any inappropriate actions by the prosecutor.  As Respondent asserts, Petitioner brought the same claim in his opening brief to the Fifth District Court of Appeal and in his petition for review before the California Supreme Court. (Lodged Docs. 1 at 43-44; 7 at 29-30).  Before the state courts, Petitioner argued that the prosecutor

committed misconduct by continually requesting that she be allowed to approach the jury to hand exhibits to the jury. Petitioner argued that such conduct highlighted the fact that Petitioner was shackled to the floor.

Without addressing whether such conduct actually rises to the level of "a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process" or constituted "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury," the appellate court found that under any standard of review, the prosecutor's conduct did not prejudice the Petitioner. (Lodged Doc. 6 at 46 )(citations omitted). Pointing out that the trial court intervened on several occasions by directing the prosecutor to hand her exhibits to the bailiff and then instructing the jury pursuant to CALJIC No. 1.04, the appellate court concluded that such circumstances did not deny the Petitioner his right to a fair trial. (Id.)

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial–i.e., that absent the alleged impropriety, the verdict probably would have been different.

Here, the prosecutor's alleged misconduct consisted of violating the court's order to remain seated during the examination of witnesses. (Lodged Doc. 1 at 43)(citing to RT, Vol. 2 at 302, 317-324, 326, 387, 399, 410, 141). Prior to jury deliberations, the trial court instructed the jury that:

> The fact that physical restraints may have been placed upon Defendant must not be considered by you for any purpose. They are not evidence of guilt and must not be considered by you as any evidence that he is more likely to be guilty than not guilty. You must not speculate as to why restraints have been used. In determining the issues in this case, disregard this matter entirely.

(RT, Vol. 3 at 505).

Leaving aside the question of whether such actions by the prosecutor rises to the level of

misconduct that has "so infected the trial with unfairness," this Court finds that Petitioner has not established that there is a reasonable probability that the outcome was influenced by the prosecutor's conduct.  The jury already knew that Petitioner was an inmate since Petitioner was charged for the crime of battery by an inmate on a correctional officer, as well as aggravated battery by an inmate on a correctional officer.  Further, the Court finds that the judge's curative instructions to the jury was sufficient to ensure that the alleged misconduct by prosecutor did not render the Petitioner's trial fundamentally unfair.

### D.     Ground Four

Petitioner's fourth basis for relief is that the trial court erred in allowing Petitioner to continue in pro per considering Petitioner's "deteriorated" mental condition. (Pet. at 6).  In this instant petition, Petitioner does not further develop this claim other than to assert that the trial court violated his rights under the federal constitution.  Respondent correctly asserts that Petitioner raised a violation of his right to due process and a fair trial before the California Court of Appeal, arguing before the appellate court that the trial court violated his constitutional rights by failing to revoke the Petitioner's pro per status. (Answer at 17; Lodged Doc. 1 at 19-27).

It is well settled that a defendant has the right to represent himself pro se or to be represented by an attorney.  Faretta v. California, 422 U.S. 806 (1975); United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir.1981) (per curiam).  Under AEDPA, federal courts defer to a state court's finding that the Petitioner's waiver of the right to counsel was knowing, intelligent, and voluntary unless it is contrary to or an unreasonable application of Faretta, 422 U.S. 806.  Cook v. Schriro, 2008 WL 348487 (9th Cir. 2008) (citing Weaver v. Palmateer, 455 F.3d 958, 963 (9th Cir. 2006)).

As stated by the Supreme Court in Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680 (1993), "[n]or do we think that a defendant who waives his right to the assistance of counsel must be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning that the decision to waive other constitutional rights."  The Supreme Court continued that the heightened standard for waiving the right to counsel related to the inquiry of whether such action was knowing and intelligent, not that it required a heightened standard of competence." Id. at 401.  The Godinez court further noted that a competency hearing is not required every time a defendant waives the right to

counsel but rather is required only when there is a reason to doubt the defendant's competence. Id. at 402. As the Supreme Court recently described, the Godinez court's holding is that a state may permit a "gray-area" defendant to represent himself. Indiana v. Edwards, 128 S.Ct. 2379, 2385 (2008).

Here, Petitioner does not allege that his continuing waiver of counsel was not knowing or voluntary as he did in his appeal before the California Court of Appeal. (See Lodged Doc. 1 at 6-16). Rather, Petitioner seems to be raising another contention he brought before the appellate court–namely that the trial court violated his right to due process of the law by failing to revoke his pro per privileges once he mentally regressed. (Lodged Doc. 1 at 19). As this Court concluded earlier, substantial evidence did not exist to question Petitioner's mental competence to stand trial until Petitioner was placed on suicide watch at the beginning on the second phase of the trial. Additionally, substantial evidence supported the trial court's determination that Petitioner was mentally competent to stand trial. Consequently, the Court finds that it was not a violation of Petitioner's right to due process that the trial court did not revoke Petitioner's pro per privileges.

### E. Ground Five

Petitioner amended his original petition to include the claim of sentencing error as a ground for relief. Respondent correctly points out that Petitioner's claim is a conclusory allegation without citation to any supporting references in the trial record or any supporting documents. Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

Furthermore, a review of the Petitioner's briefs submitted to the California Court of Appeal and the California Supreme Court reveals that Petitioner fails to present this error to the state courts. "A federal court has the authority to review a federal constitutional claim presented by a state prisoner if available state remedies have been exhausted. If state remedies have not been exhausted, a district court must dismiss a petition filed pursuant to section 2254. If a federal constitutional claim can no longer be raised because of a failure to follow the prescribed procedure for presenting such an issue, however, the claim is procedurally barred and the petition must be denied." Johnson v. Lewis, 929 F.2d 460, 463 (9th Cir. 1991) (citations omitted); O'Sullivan v. Boerckel, 526 U.S.

838, 848-49 (1999) (finding claims procedurally defaulted where they were presented to the state intermediate appellate court, but not included in a petition for discretionary review to the state supreme court). Here, Petitioner did not raise a claim of sentencing error before either of the state courts. Consequently, Petitioner fifth claim is procedurally defaulted.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 19, 2008           /s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE